UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                             :
ELIZABETH TAPINEKIS, individually and on                     :
behalf of others similarly situated,                         :
                                                             :
                              Plaintiff,                     :        1:20-cv-03210-JMF
                                                             :
            -v-                                              :        (JURY TRIAL DEMANDED)
                                                             :
PACE UNIVERSITY,                                             :
                                                             :
                              Defendant.                     :
                                                             :
-------------------------------------------------------------X

## SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiff Elizabeth Tapinekis ("Plaintiff") by and through undersigned counsel brings this action against Pace University ("Defendant" or the "University") on behalf of herself and all others similarly situated, and makes the following allegations based upon information, attorney investigation and belief, and upon Plaintiff's own knowledge:

## PRELIMINARY STATEMENT

1.      Plaintiff brings this case as a result of Defendant's decision not to issue appropriate refunds for the Spring 2020 semester after canceling in-person classes and changing all classes to an online/remote format, closing most campus buildings, and requiring all students who could leave campus to leave as a result of the Novel Coronavirus Disease ("COVID-19").

2.      This decision deprived Plaintiff and other members of the Classes from recognizing the benefits of on-campus enrollment, access to campus facilities, student activities, and other benefits and services in exchange for which they had already paid fees and tuition.

3.      Defendant has either refused to provide reimbursement for the tuition, fees, and other costs that Defendant failed to provide during the Spring 2020 semester, or has provided

1

inadequate and/or arbitrary reimbursement that does not fully compensate Plaintiff and members of the Classes for their loss.

4.     This action seeks refunds of the amount Plaintiff and members of the Classes are owed on a *pro-rata* basis, together with the damages as pled herein.

## PARTIES

5.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

6.     Pace University is an institution of higher learning located in the State of New York.

7.     Upon information and belief, Defendant has an estimated endowment of approximately $182 Million[1] and more than 13,000 enrolled students during the 2019-2020 academic year.[2]

8.     Moreover, Defendant was allocated more than $8.56 million of federal stimulus funds under the CARES Act.[3]

9.     Plaintiff is an individual and a resident and citizen of the State of New York.

10.    Plaintiff was a student enrolled at Pace University during the Spring 2020 term.

## JURISDICTION AND VENUE

11.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

12.    This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship

---

[1] https://www.pace.edu/sites/default/files/files/finance-administration/financial-treasury-services/financialstatements/financial-statements-2018.pdf.
[2] https://www.pace.edu/admissions-aid/freshman/pace-student-body-profile.
[3] https://www2.ed.gov/about/offices/list/ope/allocationsforsection18004a1ofcaresact.pdf

from one Defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

13.     This Court has personal jurisdiction over Defendant because Defendant conducts business in New York and has sufficient minimum contacts with New York.

14.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## BACKGROUND FACTS

15.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

16.     Plaintiff was enrolled as a full-time student for the Spring 2020 academic semester at Defendant's institution.

17.      As a precondition for enrollment, Plaintiff was required to and did pay substantial tuition for the Spring 2020 semester either out of pocket or by utilizing student loan financing, as did all members of the putative Tuition Class.

18.     There are hundreds, if not thousands, of institutions of higher learning in this country.

19.     Some institutions of higher learning provide curriculum and instruction that are offered on a remote basis through online programming which do not provide for physical attendance by the students.

20.     Defendant's institution offers both in-person, hands-on programs, and fully online distance-learning programs, which it markets and prices as separate and distinct products.

21.     Plaintiff and members of the proposed Tuition Class did not choose to attend another institution of higher learning, or to seek an online degree, but instead chose to attend

3

Defendant's institution and specifically chose the on-campus program and enrolled on that basis.

22.    Defendant has recognized and admitted the inherent difference between its in-person and online products, and markets them separately throughout its website and other publications and circulars, including its academic catalogs. [4]



23.    Conversely, the in-person experience at the physical campuses is marketed as the primary benefit of the on-campus educational experience.

24.    For example, Defendant lists the "top 5" reasons that students should consider enrolling in the New York City Campus, and each is predicated upon the ability to be physically present:[5]

[space left intentionally blank]

_____

[4] https://web.archive.org/web/20180622132855/http://www.pace.edu/consumer-information
[5] https://web.archive.org/web/20190704190831/https://pace.edu/nyc.

## THE TOP 5 REASONS TO STUDY ON OUR
# NEW YORK CITY CAMPUS



### THE CITY IS YOUR CAMPUS

With the iconic skyline right outside your window and the hustle and bustle on the streets below, it's easy to see why this city is the intersection of innovation, art, and power. This is your campus. From Tribeca to SoHo to the Village and Brooklyn, you could spend the next four years exploring NYC and never have the same experience twice.



### THE CITY IS YOUR CLASSROOM

At Pace, learning extends beyond the classroom walls. Our dedicated professors are often working professionals who bring their expertise to Pace students. And, with the Big Apple as your backdrop, you can achieve anything. Explore finance at the stock exchange, engage in diplomacy at the UN, participate in the hackathons at Google. The opportunities are endless.



### BIG CITY, BIGGER CONNECTIONS

What they say is true: if you can make it here, you can make it anywhere. NYC is home to some of the world's biggest companies and a network of successful faculty, alumni, and peers, who will help you work your way from a cubicle to a corner office.



### WE'VE TRANSFORMED OUR CAMPUS FOR YOU

Brand new student center, student commons, study spaces, faculty and student collaboration spaces, two new residence halls including the world's tallest, and much more. We're here for YOU – and these new spaces reflect that.



### DOWNTOWN IS WHAT'S UP

At the foot of the iconic Brooklyn Bridge, Pace's downtown location places you at the epicenter of cutting-edge tech, the avant-garde art scene, and the fast-paced culture of Wall Street. Now one of the city's most exciting destinations for the arts, food, shopping, and sight-seeing, it's clear to see why NYC's oldest neighborhood is being called the new New York. Plan your visit today.

25.     The same is true of the Westchester campus:[6]

**THE TOP 5 REASONS TO STUDY ON OUR**
**WESTCHESTER CAMPUS**



**STATE OF THE ART CAMPUS.**

We've invested significantly in our 200-acre campus to build brand-new academic, research, residential, and athletic facilities, as well as a renovated and expanded student center. You'll love where you live, learn, study, eat, and play.



**OPPORTUNITY IS CLOSE BY.**

Internship possibilities abound, with Fortune 500 companies such as IBM, NBC Sports, PepsiCo, and Mastercard operating alongside entrepreneurial start-ups and state and local government offices and agencies.



**OPEN SPACES, AMAZING PLACES.**

Our campus provides the quintessential college experience. Our on-campus Nature Center–home to gardens, a nature trail, and plenty of charismatic resident animals–makes you feel like you're in another world. And just a few miles away, easy access to hiking, skiing, kayaking, and more.



**VIBRANT AND DIVERSE CAMPUS LIFE.**

If you're looking for a close-knit community where everybody knows your name and an active campus with NCAA Northeast-10 sports teams, 6+ student clubs and organizations including Greek life, you've come to the right Pace campus. Your second family is waiting to meet you.



**THE BEST OF BOTH NEW YORK WORLDS...**

Just 45 minutes away by train or shuttle bus, NYC is your campus, too! Plan your visit today.

---

[6] https://web.archive.org/web/20190704190831/https://pace.edu/westchester

26.     Specifically at Defendant's Westchester campus,

## JOIN THE CLUB: THERE'S A STUDENT ORG THAT COULD USE YOUR INPUT.

When you become a member of one of the nearly 60+ student clubs and organizations on the Westchester Campus alone, you'll have the chance to incorporate classroom theory into real life experiences, which will benefit you personally and academically. And did we mention how much fun you'll have? Go ahead, be as effective as possible!

27.     Moreover, at the Westchester campus, "all Pace students have access to the 75,000-square foot Goldstein Health, Fitness, and Recreation Center."

### Health, Fitness, and Recreation Centers

All Pace students have access to the 75,000-square foot Goldstein Health, Fitness, and Recreation Center. The state-of-the-art facility includes a walking/jogging track, aerobics/dance room, fitness room with the latest cardio equipment, an eight-lane swimming pool, and a 2,400-seat arena with scoreboards and a message center. Plus, there are locker rooms, an equipment room, VIP room, meeting room, and concession stand. The athletics staff offices and healthcare unit are also housed here. The Center is home to Pace University Men's and Women's Basketball, Swimming and Diving, and Women's Volleyball teams, as well as several intramural activities.

28.     Further, the university aggressively markets the on-campus experience by email campaigns and other communications stating "Study in the heart of New York City," "[O]ur New York campus could be perfect for you," "We can't wait to see you on campus," and "Study in an art capital –New York City!"[7]

29.     Additionally, telephone campaigns enlist recruiters to promise students that "you can study at Pace's NYC campus in the energetic neighborhood of lower Manhattan, just blocks away from the Financial District, where the world is literally at your doorstep."[8]

30.     Other marketing endeavors inveigle the students to "Apply to study and work in NYC," and "New York City? Westchester? The choice is yours.  The skyline.  Bright lights on Broadway.  Must-see museums.  The sprawl of Central Park.  You'll do and see it all as a Pace University student."[9]

---

[7] Discovery 0630 - 68
[8] Discovery 0701
[9] Discovery 0799, 1045

31.     Once the student responds, she is again promised the on-campus experience by communications like "Thanks for your interest in Pace University!  You can now access The NYC Advantage: Your website for Pace majors, scholarships, and access to all New York City has to offer."[10]

32.     The university issues another promise as shown in communications like the following: "Congratulations on your acceptance!  I hope you'll take a moment to submit your deposit; it's what guarantees your place in the fall class.  And remember – by attending Pace, you'll experience outstanding academics in one of our two vibrant locations as well as have access to one of the largest internship programs in the New York City Metro area."[11]

33.     Moreover, the university touts on-campus education not merely as an option, but rather as a distinct and desirable upper-hand: "Pace offers you exceptional academics, the opportunity to gain professional experience, and the advantage of living and learning on our New York City Campus or beautiful renovated Westchester Campus."[12]

34.     Further differentiating their online products from the in-person experience, the university implores students to actually attend with communications that plead "We want to see you on campus.  You can learn a lot from websites and publications, but nothing beats actually being on our New York City and Westchester Campuses."[13]

35.     In fact, the university makes clear promises of the on-campus experience by stating "[w]e want to extend the opportunity for you to join us at Pace University in New York City."[14]

36.     Nearly every marketing communication makes some promise based on the physical

---

[10] Discovery 0971
[11] Discovery 1231
[12] Discovery 1630
[13] Discovery 1634
[14] Discovery 2567

location of the university, such as "at Pace, strong academics, real-world experiences in NYC, and mentorships guide every student toward becoming successful, both personally and professionally. That's what sets Pace University apart."[15]

37.   Likewise, the university entices the student by saying "we speak New York. Respond today.  At Pace University, the city will be your campus and classroom, and you will be near some of the world's biggest companies"[16] and "on Pace University's New York City Campus, you'll live in the heart of the Financial District in lower Manhattan.  With immediate access to Times Square and Broadway, the Metropolitan Museum of Art or the Metropolitan Opera, Chinatown, Yankee Stadium, and Central Park, you'll never run out of things to do."[17]

38.   Accordingly, when students pay tuition in exchange for enrollment in the on-campus programs at Defendant's University, such students expect to receive, and Defendant has promised to provide, benefits and services above and beyond basic academic instruction, which include but are not limited to:

a.   Face-to-face interaction with professors, mentors, and peers;

b.   Access to facilities such as computer labs, study rooms, laboratories, libraries, etc.;

c.   Student governance and student unions;

d.   Extra-curricular activities, groups, intramurals, etc.;

e.   Student art, cultures, and other activities;

f.   Exposure to community members of diverse backgrounds, cultures, and schools of thought;

g.   Social development and independence;

---

[15] Discovery 2629
[16] Discovery 2914
[17] Discovery 3484

    h.   Hands-on learning and experimentation; and

    i.   Networking and mentorship opportunities.

39.    Defendant makes clear: "Academic experiences at Pace emphasize teaching from both a practical and theoretical perspective, drawing on the expertise of full-time and adjunct faculty members who balance academic preparation with professional experience to bring a unique dynamic *to the classroom*."[18]

40.    Plaintiff's education was changed from in-person, hands-on learning to online instruction during the Spring 2020 term.

41.    When this happened, Plaintiff was forced from campus and deprived of the benefit of the bargain for which she had paid, and in exchange for which Defendant had accepted, tuition as set forth more fully above.

42.    In addition to tuition, Defendant charges certain mandatory fees to students enrolled in the in-person programs, including but not limited to a:

- General Fee;

- Activity Fee;

- Health Center Fee; and

- Technology Fee.

43.    Importantly, upon information and belief, Defendant does not charge the general fee, activity fee, or health center fee to students enrolled in the online program.

44.    According to Defendant, the General Fee is intended to cover "costs associated with ancillary services provided to students which are not covered by tuition" such as "writing centers, library services, co-op and career services, inter-campus transportation, safety and security,

---

[18] https://web.archive.org/web/20190812092923/https://www.pace.edu/about-us/all-about-pace/

parking, and athletic activities."[19]

45.     Upon information and belief, the Activity Fee is intended to cover a range of student activities including student government, student associations and clubs, intramurals, and other similar experiential opportunities.

46.     The Health Center Fee is intended to support costs for the "University Health Care Unit" which gives students physical access to nurse practitioners and registered nurses who are trained in diagnosing and treating illnesses, and prescribing medication.[20]

47.     The Technology Fee is intended to provide students "access to the latest instructional technology resources available" such as computer labs and other on campus technology.[21]

48.     Plaintiff was required to and did pay all mandatory fees associated with her Spring 2020 enrollment.

49.     As a result of the actions and announcements of Defendant during the Spring 2020 term, Plaintiff and members of the Fees Class no longer had the benefit of the access and services for which these fees were paid. For example, Plaintiff no longer had access to tutoring and writing centers, libraries, the university healthcare unit, or campus computer labs; no longer required transportation, safety, security, or parking benefits; and no longer had the ability to participate in athletic activities or student activities.

50.     At Defendant's request and direction, Plaintiff and members of the Classes moved out of on-campus housing and lost access to any campus facilities and services thereon throughout the remainder of the Spring 2020 term.

---

[19] Discovery 7052
[20] Id.
[21] Id.

## FACTUAL ALLEGATIONS

51.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

52.     Upon information and belief, Defendant's Spring term began on or about January 27, 2020.[22]

53.     Upon information and belief, Defendant's Spring term was scheduled to conclude on or about May 16, 2020.[23]

54.     Accordingly, Defendant's Spring semester was scheduled and contracted to consist of approximately 110 days.

55.     However, as a result of the COVID-19 pandemic, Defendant announced on March 10, 2020 that it was moving all classes online effective immediately.[24]

56.     On March 18, 2020 Defendant issued another announcement encouraging students to move out of their residence halls and return home, or to stay home if such students had already left for spring break.[25]

57.     In this same announcement, Defendant insisted they were "analyzing options for issuing refunds or credits where appropriate."[26]

58.     Unfortunately, appropriate refunds and credits were never issued.

59.     Almost immediately, students began demanding refunds for the fees and charges demanded in this action.

---

[22]
https://web.archive.org/web/20200830115551/https://www.pace.edu/sites/default/files/files/OSA/academic-scheduling/academic-calendar-2019-2020.pdf.
[23] Id.
[24] Id.
[25] Discovery 4857.
[26] Discovery 4858.

60.     As early as April 1, 2020, the students at Defendant's institution started the first change.org petition. As of this writing, there are currently at least two such petitions on the change.org website with nearly 2,000 signatures.[27]

61.     Although Defendant continued to offer some level of academic instruction via online classes, Plaintiff and members of the proposed Tuition Class were deprived of the benefits of on-campus enrollment for which they paid as set forth more fully above.

62.     These realities notwithstanding, Defendant has refused and continues to refuse to offer any refund whatsoever with respect to the tuition that has already been paid.

63.     Likewise, Plaintiff and members of the proposed Fees Class was deprived of utilizing services for which they have already paid, such as access to campus facilities, student activities, health services, and other opportunities.

64.     Nonetheless, Defendant has refused and continues to refuse to offer any refund whatsoever with respect to fees that have already been paid.

65.     Defendant has issued on-campus housing refunds as follows: $2,000 for students living on the New York campus and $1,600 for students living on the Pleasantville campus and at Haub Law.[28]

66.     This refund is both completely arbitrary and wholly inadequate.

67.     Upon information and belief, the average dorm rent for the New York campus is $10,073 per semester and the average dorm rent for the Westchester Campus is $8,000 per

---

[27] See, e.g., https://www.change.org/p/provost-at-pace-university-help-pace-students-to-get-the-refund-they-deserve ; https://www.change.org/p/pace-university-administration-pace-administration-pace-university-petition-covid-19-pandemic-fe4453c5-18a3-4d82-b3de-38266119e9a6?source_location=topic_page.
[28] https://web.archive.org/web/20200806203051/https://www.pace.edu/coronavirus/faculty-staff-students/faq-students.

semester.[29]

68.     The housing cost refund offered by Defendant equates to a refund of roughly 20% of the full cost that Plaintiff and members of the On-Campus Housing Class had already pre-paid.

69.     This refund is arbitrary and inadequate given that Plaintiff and other members of the On-Campus Housing Class were deprived of roughly 50% of the on-campus housing time for which they had already bargained and paid.

70.     Defendant has offered no explanation for how the 20% refund was determined and calculated.

71.     Defendant has refused, and continues to refuse, to offer any refund whatsoever on its meal plans.

## CLASS ACTION ALLEGATIONS

72.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

73.     Plaintiff brings this action on behalf of herself and as a class action, pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Classes:

**The Tuition Class:**

All people who paid tuition for or on behalf of students enrolled in classes at the University for the Spring 2020 semester but were denied live, in-person instruction and forced to use online distance learning platforms for the latter portion of that semester.

**The Fees Class:**

All people who paid fees for or on behalf of students enrolled in classes at the University for the Spring 2020 semester.

**The On-Campus Housing Class:**

---

[29] https://web.archive.org/web/20180808112635/https://www.pace.edu/admissions-aid/undergraduate-admissions/freshman/cost-attendance

All people who paid the costs of on-campus housing for or on behalf of students enrolled in classes at the University for the Spring 2020 semester who moved out of their on-campus housing prior to the completion of the semester because of Defendant's policies and announcements related to COVID-19.

**The Meals Class:**

All people who paid costs for or on behalf of students for meals and on-campus dining at the University for the Spring 2020 semester.

74.     Excluded from the Classes is Pace University, and any of their respective members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; and the judicial officers, and their immediate family members, and Court staff assigned to this case. Plaintiff reserves the right to modify or amend the Class definitions, as appropriate, during this litigation.

75.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

76.     This action has been brought and may be properly maintained on behalf of the Classes proposed herein under Federal Rule of Civil Procedure 23.

**Numerosity: Fed. R. Civ. P. 23(a)(1)**

77.     The members of the Classes are so numerous and geographically dispersed that individual joinder of all members is impracticable.  Plaintiff is informed and believes that there are thousands of members of the Classes, the precise number being unknown to Plaintiff, but such number being ascertainable from Defendant's records.  Members of the Classes may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

**Commonality and Predominance: Fed. R. Civ. P. 23(a)(2)**

78.     This action involves common questions of law and fact, which predominate over any questions affecting individual members of the Classes, including, without limitation:

     (a)    Whether Defendant engaged in the conduct alleged herein;

     (b)    Whether there is a difference in value between enrollment in an online distance learning program and enrollment in a live, on-campus instructional program;

     (c)    Whether Defendant breached its contracts with Plaintiff and the other members of the Tuition Class by retaining the portion of their tuition representing the difference between the value of online distance learning and on-campus, in-person enrollment;

     (d)    Whether Defendant was unjustly enriched by retaining tuition payments of Plaintiff and the Tuition Class representing the difference between the value of online distance learning and on-campus, in-person enrollment;

     (e)    Whether Defendant breached its contracts with Plaintiff and the other members of the Fees Class by retaining fees without providing the services, benefits and/or programs the fees were contracted to cover;

     (f)    Whether Defendant was unjustly enriched by retaining fees of Plaintiff and the other members of the Fees Class without providing the services, benefits and/or programs the fees were intended to cover;

     (g)    Whether Defendant breached its contracts with Plaintiff and the other members of the On-Campus Housing Class by not refunding them the full-pro-rated amount of their housing expenses when the pandemic prevented them from continuing to live on campus safely;

(h)    Whether Defendant was unjustly enriched by retaining payments of Plaintiff and the other members of the On-Campus Housing Class while such members moved out of their on-campus housing;

(i)    Whether Defendant breached its contracts with Plaintiff and the other members of the Meals Class by retaining costs for food and on-campus dining without providing those services which the costs were intended to cover;

(j)    Whether Defendant was unjustly enriched by retaining payments of Plaintiff and the other members of the Meals Class without providing the food and on-campus dining options which those costs were intended to cover;

(k)    Whether Defendant violated New York General Business Law § 349, § 350 *et seq.* as to Plaintiff and the other members of the Tuition Class;

(l)    Whether Defendant violated New York General Business Law § 349, § 350 *et seq.* as to Plaintiff and the other members of the Fees Class;

(m)    Whether Defendant violated New York General Business Law § 349, § 350 *et seq.* as to Plaintiff and the other members of the On-Campus Housing Class;

(n)    Whether Defendant violated New York General Business Law § 349, § 350 *et seq.* as to Plaintiff and the other members of the Meals Class;

(o)    Whether certification of any or all of the classes proposed herein is appropriate under Fed. R. Civ. P. 23;

(p)    Whether Class members are entitled to declaratory, equitable, or injunctive

relief, and/or other relief; and

(q)     The amount and nature of relief to be awarded to Plaintiff and the other

members of the Classes.

**Typicality: Fed. R. Civ. P. 23(a)(3)**

79.     Plaintiff's claims are typical of the claims of other members of the Classes because, among other things, all such members were similarly situated and were comparably injured through Defendant's wrongful conduct as set forth herein.

**Adequacy: Fed. R. Civ. P. 23(a)(4)**

80.     Plaintiff is an adequate representative of the Classes because her interests do not conflict with the interests of other members of the Classes they seek to represent.  Plaintiff has retained counsel competent and experienced in complex litigation and Plaintiff intends to prosecute the action vigorously.  The interests of the Classes will be fairly and adequately protected by Plaintiff and her counsel.

**Superiority: Fed. R. Civ. P. 23(b)(3)**

81.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiff and other members of the Classes are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the Classes to individually seek redress for Defendant's wrongful conduct.

82.     Even if members of the Classes could afford individual litigation, the Court system likely could not.  Individualized litigation creates a potential for inconsistent or contradictory

judgments and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, comprehensive supervision by a single court, and finality of the litigation.

**Certification of Specific Issues: Fed. R. Civ. P. 23(c)(4)**

83.    To the extent that any described Class herein does not meet the requirements of Rules 23(b)(2) or (b)(3), Plaintiff seeks the certification of issues that will drive the litigation toward resolution.

**Declaratory and Injunctive Relief: Fed. R. Civ. P. 23(b)(2)**

84.    Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described herein, with respect to the members of the Classes as a whole.

**FOR A FIRST COLLECTIVE CAUSE OF ACTION**
**BREACH OF CONTRACT**

**(Plaintiff and Other Members of the Tuition Class)**

85.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

86.    Plaintiff brings this count on behalf of herself and other members of the Tuition Class.

87.    Plaintiff and the other members of the Tuition Class entered into contracts with Defendant which provided that Plaintiff and other members of the Tuition Class would pay tuition for or on behalf of students and, in exchange, Defendant would enroll such students and admit them to campus; providing them the full on-campus educational experience, including but not limited to access to campus facilities, access to campus activities, and live, in-person instruction

in a physical classroom.

88.     The contractual terms are as implied and set forth by Defendant through its website, academic catalogs, student handbooks, correspondence, marketing materials and other circulars, bulletins, and publications.

89.     These terms form the basis of the bargain on which prospective students agree to accept Defendant's offer of enrollment in exchange for the payment of tuition and fees.

90.     One such right is the ability to be physically present on campus, and fully enjoy the facilities, services, and opportunities provided thereon, including the campus' location and surrounding opportunities within and around New York City.

91.     The university expressly guarantees its students once they are accepted into their on-campus product that they will be learning in the New York City Metro area: "Congratulations on your acceptance!  I hope you'll take a moment to submit your deposit; it's what guarantees your place in the fall class.  And remember – by attending Pace, you'll experience outstanding academics in one of our two vibrant locations as well as have access to one of the largest internship programs in the New York City Metro area."[30]

92.     Defendant does not deny that the physical location of its campus is a main benefit of enrollment that attracts many students to the University:[31]

---

[30] Discovery 1231

[31] https://web.archive.org/web/20190812092923/https://www.pace.edu/about-us/all-about-pace/.

With three campuses located in and around New York City, Pace offers students a diverse selection of living and learning experiences. The New York City Campus in Lower Manhattan, recently renovated with ultramodern facilities, collaborative learning spaces, and residence halls, is within walking distance to Wall Street, South Street Seaport, and the Brooklyn Bridge, and a subway ride from all that the city has to offer. The Pleasantville Campus in Westchester County, only an hour by train from New York City, offers students the traditional suburban collegiate setting with state-of-the-art renovations on a 200-acre bucolic campus and 14 NCAA Division II teams. The White Plains Campus, home to the Elisabeth Haub School of Law, is situated in the heart of White Plains' buzzing suburban sprawl. These three strategic locations are regularly cited as a top reason why students choose to attend Pace University.

93.     Defendant's website and recruitment brochures are the primary means through which Defendant targets prospective new students and attempts to influence such students to apply for enrollment at the University as opposed to other institutions of higher learning.

94.     Through these publications, Defendant markets to and enrolls students in two separate and distinct products.

95.     Defendant specifically markets certain classes and degree programs as being offered on a fully online basis.

96.     Indeed, Defendant dedicates an entire section of its website to these programs, known as "Pace Online" which can be accessed at https://online.pace.edu/.

97.     Conversely, Defendant's publications with respect to non-online classes are full of references to the on-campus experience, including numerous references to student activities; campus amenities; class size and student/teacher ratios; campus diversity, campus location, and the like.

98.     When visitors enter the "About Pace" page on Defendant's main website (https://web.archive.org/web/20190812092923/https://www.pace.edu/about-us/all-about-pace/,) they find that Defendant promises students a balanced education, including clinicals:

Pace prepares students to become leaders in their fields by providing an education that combines exceptional academics with real-world experiences including internships, research, clinicals, civic engagement, and study abroad.

99.     Students seeking further information about the University are directed to the admissions website, https://web.archive.org/web/20191216124613/https://www.pace.edu/admissions-and-aid.

100.    Here, Defendant markets that University promises students "an education that combined exceptional academics with professional experience and *the New York advantage*."[32]

101.    On Defendant's "Life on Campus" website, Defendant also markets: "The Entrepreneurship Lab offers students the resources to create innovative start-ups."

102.    Upon information and belief, there were no references or disclaimers in any of Defendant's websites, circulars, bulletins, publications, brochures, or other advertisements prior to January 31, 2020, that even referenced the possibility of in-person classes being changed to fully online classes at Defendant's discretion or for any other reason whatsoever after the start of a given term.[33]

103.    Those prospective students who were interested in enrolling at the University after consuming the marketing materials described above were invited to complete applications, and some were selected for and offered admission.

104.    When a student is admitted to the University, that student receives a number of further communications and has a number of additional interactions with Defendant.

105.    Some such acceptance communications promise a unique educational opportunity because of the university's unique physical location.

---

[32] https://web.archive.org/web/20191216124613/https://www.pace.edu/admissions-and-aid
[33] January 31, 2020 is the approximate date that students were permitted to withdraw from the University for the Spring 2020 term and receive a full tuition refund.

106.    For example, students accepted to the political science program are promised the opportunity to "become a part of a close-knit community of scholars while gaining access to opportunities available only in New York City."[34]

107.    Political Science is not unique in this promise.   Students accepted to the Sociology/Anthropology program are inveigled with the promise to "become part of a close-knit community while gaining access to opportunities available only in New York City, such as internship opportunities with organizations such as the Museum of Natural History, Planned Parenthood, the Henry Street Settlement, and many more.  You can also attend sponsored panel discussions, walking tours, film screenings and organized social events."[35]

108.    Indeed, some programs are dependent upon in-person, on-campus settings as evidenced by the Film and Screen Studies program.  When accepted, students are sternly informed that professional editing, lighting, and sound equipment "is available only on the New York City campus."[36]

109.    Similarly, students accepted into the Art program are enticed to attend Pace because "Pace has a partnership with New York City's renowned International Center for Photography (ICP) so that Pace students can enroll in innovative courses at ICP's state-of-the-art facilities."[37]

110.    During this time, students also review the "Student Handbook" and the University Catalog which can be found at https://www.pace.edu/student-handbook/.

111.    The Student Handbook opens with a "welcome" message that states, "[y]ou have joined a vibrant, engaging academic community in which intellectual, personal, and interpersonal

---

[34] Discovery 0713
[35] Discovery 0728
[36] Discovery 0732
[37] Discovery 0735

goals for students are fostered and maintained in formal study, campus life, and community service."[38]

112.    This message goes on to promise students they will be supported "by a vast campus network that includes various student-run organizations and activities, public-service opportunities, fraternities and sororities, as well as athletics, recreational, and residential life programs."[39]

113.    Finally, the welcome message concludes, "[b]ecause Pace's admirable student body is socially, ethnically, and racially more diverse than the student population at many other universities, you can participate in a broad range of multicultural experiences that will help you learn to live and work with people whose backgrounds are different from yours."[40]

114.    Following the welcome message, students are introduced to the history of Pace University.

115.    Here, Defendant states, "Pace prepares students to become leaders in their fields by providing an education that combines exceptional academics with real-world experiences including internships, research, clinicals, civic engagement, and study abroad."[41]

116.    Defendant goes on to state:[42]

> At the core of a Pace education is a strong foundation in the liberal arts and sciences with an emphasis on the combination of theory and practice. More than 50 cutting-edge centers, institutes, labs, and clinics, including the NYC Design Factory, Entrepreneurship Lab, Environmental Policy Clinic, Cybersecurity Education and Research Lab, Immigration Justice Clinic, and Health Care Simulation Labs serve as a training ground for future leaders…

---

[38] Discovery 4632
[39] Id.
[40] Id.
[41] https://web.archive.org/web/20190812092923/https://www.pace.edu/about-us/all-about-pace/
[42] Id.

Pace combines the benefits and resources of a large university with the personalized attention and focus associated with a small college, with an average class size of only 20 students and a 14:1 student to faculty ratio. Academic experiences at Pace emphasize teaching from both a practical and theoretical perspective, drawing on the expertise of full-time and adjunct faculty members who balance academic preparation with professional experience to bring a unique dynamic to the classroom…

With three campuses located in and around New York City, Pace offers students a diverse selection of living and learning experiences. The New York City Campus in Lower Manhattan, recently renovated with ultramodern facilities, collaborative learning spaces, and residence halls, is within walking distance to Wall Street, South Street Seaport, and the Brooklyn Bridge, and a subway ride from all that the city has to offer. The Pleasantville Campus in Westchester County, only an hour by train from New York City, offers students the traditional suburban collegiate setting with state-of-the-art renovations on a 200-acre bucolic campus and 14 NCAA Division II teams. The White Plains Campus, home to the Elisabeth Haub School of Law, is situated in the heart of White Plains' buzzing suburban sprawl. These three strategic locations are regularly cited as a top reason why students choose to attend Pace University.

Pace is a university whose resources have played an essential role in the realization of individual dreams of achievement, and whose mission is voiced in the motto: ***Opportunitas***.

117. Next in the Handbook, students are introduced to Defendant's five-year strategic plan. According to the plan:[43]

Our new facilities will allow the University to operate in a student-focused learning and research environment that combines the traditional classroom with an increased focus on experiential learning. We will create growth by focusing intensively on improving the student experience and increasing the real value of a Pace degree. We will nurture the development of new programs on both campuses, building on the strengths of our faculty and providing them the resources and flexibility to succeed.

---

[43] https://web.archive.org/web/20200815193102/https://www.pace.edu/strategic-plan/embracing-the-future

> By 2020, the University will have made significant strides in
> completing several major initiatives currently underway and will
> have developed innovative approaches to ensuring the success of
> our students and alumni, while improving the University's
> reputation and stature. By focusing on four themes—Student
> Experience, Student and Alumni Outcomes, Institutional Vitality,
> and a Community of Excellence—we will emerge a stronger
> institution with a unique and essential mission well suited to
> meeting the needs of students today and in the future.

118. When students officially accept their offers, they must make arrangements to pay tuition and fees.

119. Once students pay their tuition, it comes time to register for classes. This is another area where Defendant specifically emphasizes the distinction between its in-person and online class offerings through the academic catalogs and course listings on the website.

120. For example, academic catalogs and course listings for the Arts and Entertainment Minor state clearly that "[t]he program leverages our New York City location as one of the arts and entertainment capitals of the world."[44]

121. Similarly, the business management program description states "[f]urther, Lubin leverages its New York City connections to bring award-winning directors, producers, and entertainment managers into the classroom."[45]

122. When students log on to their "MyPace Portal" to select their classes, they are able to sort classes not only by subject, instructor, and time but also by campus location and instructional method:[46]

---

[44] Discovery 4518
[45] Discovery 7256
[46] https://web.archive.org/web/20180909221732/http://appsrv.pace.edu/ScheduleExplorerLive/



123.    When sorting by campus, students can choose from the following options:[47]



124.    Upon registration, students in many of Defendant's on-campus schools and programs were subject to strict personal attendance requirements as set forth in various departmental policies and handbooks, evidencing Defendant's requirement and the student's acceptance of the requirement that such students physically attend such classes on campus.

125.    That Defendant offered to provide, and members of the Tuition Class expected to receive, instruction on the physical campus is further evidenced by the parties' prior course of

---

[47] Id.

conduct.

126.     Those classes for which students expected to receive in-person instruction began the Spring 2020 semester by offering in-person instruction.

127.     Each day for the weeks and months leading up to March 11, 2020, students attended physical classrooms to receive in-person instruction, and Defendant provided such in-person instruction.

128.     Likewise, upon information and belief, most students were provided with syllabi and other documents that referenced class meeting schedules, locations, and physical attendance requirements.

129.     Each day for the weeks and months prior to announced closures, students had access to the full campus.

130.     Accordingly, it is clear that Defendant offered to provide live, in-person education, together with a full on-campus experience and that members of the Tuition Class accepted that offer by paying tuition and attending classes during the beginning of the Spring 2020 semester.

131.     Based on this mutual assent, Plaintiff and other members of the Tuition Class fulfilled their end of the bargain when they paid tuition for the Spring 2020 semester, either by paying out of pocket or by using student loan financing, or otherwise.

132.     However, the University breached the contract with Plaintiff and other members of the Tuition Class by moving all classes for the Spring 2020 semester to online distance learning platforms, and restricting the on-campus experience without reducing or refunding tuition accordingly.

133.     This cause of action does not seek to allege "academic malpractice."

134.     Rather, it is clear from the facts and circumstances that Defendant offered two

separate and distinct products, one being live, in-person, on-campus education, with its featured ancillary and related services, and the other being online distance education.

135.    Plaintiff and members of the Tuition Class accepted Defendant's offer for live in-person on-campus education and paid valuable consideration in exchange.

136.    However, after accepting such consideration from Plaintiff and other members of the Tuition Class, Defendant provided a materially different product, which deprived Plaintiff and other members of the Tuition Class of the benefit of the bargain for which they had already paid.

137.    Defendant retained tuition monies paid by Plaintiff and other members of the Tuition Class, without providing them the full benefit of their bargain.

138.    Defendant's refusal to offer refunds is in bad faith.

139.    Plaintiff and other members of the Tuition Class have suffered damage as a direct and proximate result of Defendant's breach amounting to the difference in the fair market value of the services and access for which they contracted, and the services and access which they actually received.

140.    As a direct and proximate result of Defendant's breach, Plaintiff and other members of the Tuition Class are legally and equitably entitled to damages, to be decided by the trier of fact in this action, to include disgorgement of the difference between the fair market value of the online learning provided versus the fair market value of the live, in-person instruction in a physical classroom on a physical campus with all the attendant benefits for which they contracted.

**FOR A SECOND COLLECTIVE CAUSE OF ACTION**
**UNJUST ENRICHMENT**

**(Plaintiff and Other Members of the Tuition Class)**

141.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

142.    Plaintiff brings this count on behalf of herself and other members of the Tuition Class.

143.    This claim is pled in the alternative to, and to the extent it is determined a contract does not exist or otherwise apply, the contract-based claim set forth in the First Cause of Action above.

144.    Plaintiff and other members of the Tuition Class paid substantial tuition for live, in-person instruction in physical classrooms on a physical campus with all the attendant benefits.

145.    Plaintiff and other members of the Tuition Class conferred a benefit on Defendant when they paid this tuition.

146.    Defendant has realized this benefit by accepting such payment.

147.    However, Plaintiff and other members of the Tuition Class did not receive the full benefit of their bargain.

148.    Instead, Plaintiff and other members of the Tuition Class conferred this benefit on Defendant in expectation of receiving one product, *i.e.*, live in-person instruction in a physical classroom along with the on-campus experience of campus life as described more fully above, but they were provided with a materially different product carrying a different fair market value, *i.e.*, online instruction devoid of the on-campus experience, access, and services.

149.    Defendant has retained this benefit, even though Defendant has failed to provide the services for which the tuition was collected, making Defendant's retention unjust under the circumstances.

150.    It is significantly cheaper for Defendant to provide the online product than the on-campus product.

151.    As a result of closing campus and moving classes online, Defendant saved

significant sums of money in the way of reduced utility costs, reduced maintenance and staffing requirements, reduced or eliminated hours for hourly employees, reduced or eliminated hours for paid work study students, and otherwise.

152.    Simply put, it is significantly cheaper to operate a remote, on-line campus than a fully open physical campus.  But even if it was not, it is not the product that students were offered and not the product the students expected to receive.

153.    Equity and good conscience require that the University return a portion of the monies paid in tuition to Plaintiff and other members of the Tuition Class.

154.    This is particularly true where, as here, Defendant is supported by a $182 million endowment, while its students on information and belief, do not have access to such immense financial resources, and further where, on information and belief, a substantial portion of its students have incurred substantial debt to finance an educational experience that they did not receive.

155.    At the same time, Defendant received significant aid from the federal government.

156.    Defendant should be required to disgorge this unjust enrichment to the extent that Defendant has retained more than the fair market value for the product that Defendant was able to provide.

### FOR A THIRD COLLECTIVE CAUSE OF ACTION
### BREACH OF CONTRACT

#### (Plaintiff and Other Members of the Fees Class)

157.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

158.    Plaintiff brings this count on behalf of herself and other members of the Fees Class.

159.    In addition to tuition, Defendant charges a number of mandatory fees.

160.    In its publications and, particularly on its website, Defendant specifically describes the nature and purpose of each fee.

161.    Some fees apply broadly to all or certain groups of students, while other fees are program or course based.

162.    Such fees are set forth not only in amount but also in description and purpose through the various academic catalogs and on the website.

163.    As such, it is axiomatic that the monies Plaintiff and other members of the Fees Class paid towards these fees were intended by both the students and Defendant to cover the services, access, benefits and programs for which the fees were described and billed.

164.    According to Defendant, the General Fee is intended to cover "costs associated with ancillary services provided to students which are not covered by tuition" such as "tutoring and writing centers, library services, co-op and career services, inter-campus transportation, safety and security, parking, and athletic activities."[48]

165.    Upon information and belief, the Activity Fee is intended to cover a range of student activities including student government, student associations and clubs, intramurals, and other similar experiential opportunities.

166.    The Health Center Fee is intended to support costs for the "University Health Care Unit" which gives students physical access to nurse practitioners and registered nurses who are trained in diagnosing and treating illnesses, and prescribing medication.[49]

167.    The Technology Fee is intended to provide students "access to the latest instructional technology resources available" such as computer labs and other on campus

---

[48] Discovery 7052
[49] Id.

technology.[50]

168.    As such, in accepting these terms and paying these fees, a contract was formed between Plaintiff, including the Fees Class, and Defendant, which provided that Plaintiff and other members of the Fees Class would pay these fees for or on behalf of themselves and, in exchange, Defendant would provide or make available the services, access, benefits and/or programs related to those fees, as promised.

169.    Plaintiff and other members of the Fees Class fulfilled their end of the bargain when they paid these fees for the Spring 2020 semester, either by paying out of pocket or by using student loan financing, or otherwise.

170.    However, Defendant breached the contract with Plaintiff and other members of the Fees Class by moving all classes for the Spring 2020 semester to online distance learning platforms, constructively evicting students from campus, closing most campus buildings and facilities, and cancelling most student activities.

171.    By retaining fees paid by Plaintiff and other members of the Fees Class, without providing them the full benefit of their bargain, Defendant has failed to perform its contractual obligations.

172.    Plaintiff and other members of the Fees Class have suffered damage as a direct and proximate result of Defendant's breach, namely being deprived of the value of the services, access, benefits and/or programs the fees were intended to cover.

173.    As a direct and proximate result of Defendant's breach, Plaintiff and other members of the Fees Class are legally and equitably entitled to damages, to be decided by the trier of fact in this action, to include disgorgement of the pro-rata amount of fees that were collected but for which

---

[50] Id.

services were not provided.

**FOR A FOURTH COLLECTIVE CAUSE OF ACTION**
**UNJUST ENRICHMENT**

**<u>(Plaintiff and Other Members of the Fees Class)</u>**

174.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

175.    Plaintiff bring this count on behalf of herself and other members of the Fees Class.

176.    This claim is pled in the alternative to, and to the extent it is determined a contract does not exist or otherwise apply, the contract-based claim set forth in the Third Cause of Action above.

177.    Defendant has received a benefit at the expense of Plaintiff and other members of the Fees Class to which it is not entitled.

178.    Plaintiff and other members of the Fees Class paid substantial student fees for on-campus services, access, benefits and/or programs and did not receive the full benefit of the bargain.

179.    Plaintiff and other members of the Fees Class conferred this benefit on Defendant when they paid the fees.

180.    Defendant realized this benefit by accepting such payment.

181.    Defendant has retained this benefit, even though Defendant has failed to provide the services, access, benefits and/or programs for which the fees were collected, making Defendant's retention unjust under the circumstances.

182.    Equity and good conscience require that Defendant return a portion of the monies paid in fees to Plaintiff and other members of the Fees Class.

183.    This is particularly true where, as here, Defendant is supported by a $182 million endowment, while its students on information and belief, do not have access to such immense financial resources, and further where, on information and belief, a substantial portion of its students have incurred substantial debt to finance an educational experience that they did not receive.

184.    At the same time, Defendant received significant aid from the federal government, of which Defendant has indicated that it intends to retain roughly $4.28 million for itself, as opposed to passing it along to students.

185.    Defendant should be required to disgorge this unjust enrichment to the extent that Defendant has retained more than the fair market value for the product that Defendant was able to provide.

**FOR A FIFTH COLLECTIVE CAUSE OF ACTION**
**BREACH OF CONTRACT**

**<u>(Plaintiff and Other Members of the On-Campus Housing Class)</u>**

186.    Plaintiff realleges all preceding paragraphs as if fully set forth herein.

187.    Plaintiff brings this count on behalf of herself and other members of the On-Campus Housing Class.

188.    Plaintiff and the On-Campus Housing Class entered into contract with the University which provided that Plaintiff and other members of the On-Campus Housing class would pay certain fees for or on behalf of students and, in exchange, the University would provide on-campus housing to those students for the duration of the Spring 2020 semester.

189.    The university fully intended to house students on-campus, as evidenced by communications to parents that promised that Pace Path Early Start College Immersion Program students "will have the opportunity to discover the Pace campus and the beautiful city they will

call home – New Your City!"[51]

190.    As evidence of the agreement between the university and the Plaintiff, communications regarding housing fees state "[b]oth campuses off on-campus housing, which is guaranteed with your timely submission of the housing deposit by May 1."[52]

191.    Moreover, communications between the university made clear that housing was promised: "This is a quick reminder to be sure and reserve your spot in the Fall … entering class submit your tuition and housing deposit by … May 1 if you have not done so already.  This is especially important if you plan to live on-campus, as *we guarantee housing* to all students who deposit by May 1st…." (emphasis original)[53]

192.    Plaintiff and other members of the On-Campus Housing Class fulfilled their end of the bargain when they paid these fees for the Spring 2020 semester either out of pocket or by using student financing.

193.    The University breached the contract with Plaintiff and the On-Campus Housing Class when it required students to vacate such housing prior to the completion of the Spring 2020 semester, thus literally evicting them.

194.    Indeed, during formulation of an email to be communicated to students, one staff member took notice of the evictions: "I think we should avoid saying 'if you choose to move…' We are not giving them a choice, just a way to appeal the requirement."[54]

195.    The University retained fees paid by Plaintiff and other members of the On-Campus Housing Class, without providing them the full benefit of their bargain.

---

[51] Discovery 0764
[52] Discovery 0739
[53] Discovery 3952
[54] Discovery 4002

196.    Plaintiff and other members of the On-Campus Housing Class have suffered damage as a direct and proximate result of Defendant's breach, including, but not limited to, being deprived of the value of the housing that the room fees were intended to cover.

197.    As a direct and proximate result of Defendant's breach, Plaintiff and the On-Campus Housing Class are legally and equitably entitled to damages, to be decided by the trier of fact in this action, to include, but not be limited to, disgorgement of the pro-rata amount of fees that were collected but for which services were not provided.

### FOR A SIXTH COLLECTIVE CAUSE OF ACTION
### UNJUST ENRICHMENT

#### (Plaintiff and Other Members of the On-Campus Housing Class)

198.    Plaintiff realleges all preceding paragraphs as if fully set forth herein.

199.    Plaintiff brings this count on behalf of herself and other members of the On-Campus Housing Class.

200.    The University has received a benefit at the expense of Plaintiff and other members of the On-Campus Housing Class to which it is not entitled.

201.    Plaintiff and other members of the On-Campus Housing Class paid substantial room and board fees for the right to occupy on-campus housing and did not receive the full benefit of the bargain.

202.    Plaintiff and other members of the On-Campus Housing Class conferred this benefit on Defendant when they paid the fees.

203.    Defendant has realized this benefit by accepting such payment.

204.    Defendant has retained this benefit, even though Defendant has failed to provide the housing and other amenities for which the fees were collected, making Defendant's retention unjust under the circumstances.

205.     Equity and good conscience require that the University return a pro-rata portion of the monies paid in fees to Plaintiff and other members of the On-Campus Housing Class.

206.     This is particularly true where, as here, Defendant is supported by a $182 million endowment, while its students on information and belief, do not have access to such immense financial resources, and further where, on information and belief, a substantial portion of its students have incurred substantial debt to finance an educational experience that they did not receive.

207.     At the same time, Defendant received significant aid from the federal government.

208.     Defendant should be required to disgorge this unjust enrichment.

### FOR A SEVENTH COLELCTIVE CAUSE OF ACTION
### BREACH OF CONTRACT

### (Plaintiff and Other Members of the Meals Class)

209.     Plaintiff realleges all preceding paragraphs as if fully set forth herein.

210.     Plaintiff brings this count on behalf of herself and other members of the Meals Class.

211.     Plaintiff and the Meals Class entered into contracts with the University which provided that Plaintiff and other members of the Meals Class would pay certain fees for or on behalf of students and, in exchange, the University would provide meals and on-campus dining options.

212.     Indeed, Plaintiff and others similarly situated were promised "a variety of locations, programs, and services to make students' dining experience exceptional.  Whether on the New York City or Westchester Campuses, students have the flexibility to choose where,

when, and what they would like to purchase."[55]

213.    Plaintiff and other members of the Meals Class fulfilled their end of the bargain when they paid the fees for the Spring 2020 semester either out of pocket or by using student financing.

214.    The University breached the contract with Plaintiff and the Meals Class by constructively evicting students from campus, and closing most campus buildings and facilities, including dining facilities, without reducing or refunding these fees accordingly.

215.    The University retained fees paid by Plaintiff and other members of the Meals Class, without providing them the full benefit of their bargain.

216.    Plaintiff and other members of the Meals Class have suffered damage as a direct and proximate result of Defendant's breach, including but not limited to being deprived of the value of the benefits and services the fees were intended to cover.

217.    As a direct and proximate result of Defendant's breach, Plaintiff and the Meals Class are legally and equitably entitled to damages, to be decided by the trier of fact in this action, to include, but not be limited to, disgorgement of the pro-rata amount of fees that was collected but for which meals and services were not provided.

**FOR AN EIGHTH COLLECTIVE CAUSE OF ACTION**
**UNJUST ENRICHMENT**

**<u>(Plaintiff and Other Members of the Meals Class)</u>**

218.    Plaintiff realleges all preceding paragraphs as if fully set forth herein.

219.    Plaintiff brings this count on behalf of herself and other members of the Meals Class.

---

[55] Discovery 4296

220.     The University has received a benefit at the expense of Plaintiff and other members of the Meals Class to which it is not entitled.

221.     Plaintiff and other members of the Meals Class paid fees for access to on-campus meals and dining options.

222.     Plaintiff and other members of the Meals Class conferred this benefit on Defendant when they paid the fees.

223.     Defendant has realized this benefit by accepting such payment.

224.     Defendant has retained this benefit, even though Defendant has failed to provide the meals and services for which the fees were collected, making Defendant's retention unjust under the circumstances.

225.     Equity and good conscience requires that the University return a pro-rata portion of the monies paid in meal fees to Plaintiff and other members of the Meals Class.

226.     This is particularly true where, as here, Defendant is supported by a $182 million endowment, while its students on information and belief, do not have access to such immense financial resources, and further where, on information and belief, a substantial portion of its students have incurred substantial debt to finance an educational experience that they did not receive.

227.     At the same time, Defendant received significant aid from the federal government, of which Defendant has indicated that it intends to retain roughly $4.28 million for itself, as opposed to passing it along to students.

228.     Defendant should be required to disgorge this unjust enrichment.

## FOR A NINTH COLLECTIVE CAUSE OF ACTION
## VIOLATIONS OF NY GENERAL BUSINESS LAW § 349, § 350, *ET SEQ.*

### (Plaintiff and All Class Members)

229.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

230.   Plaintiff brings this count on behalf of herself and all members of the other classes.

231.   New York General Business Law § 349: Deceptive Acts and Practices Unlawful provides for consumer protection by declaring as unlawful "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state . . . ."[56]

232.   New York General business Law § 350: False Advertising Unlawful provides that "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."[57]

233.   Defendant, through its agents, servants, and employees, engaged in unlawful, unfair, deceptive and fraudulent acts and practices in violation of New York General Business Law § 349, § 350, *et. seq.* by engaging in the activities described herein.

234.   Defendant is a private university which, among other things, offered in-person, hands-on curriculum to Plaintiff and other members of the Tuition Class.

235.   Plaintiff and other members of the Classes are consumers who have paid substantial tuition and fees to attend in-person, hands-on curriculum at Defendant's University for the Spring 2020 semester, and to receive access and services (including housing and meals) in exchange for additional optional or mandatory fees.

236.   Defendant's efforts to sell its services to prospective students, which included

---

[56] *See* New York General Business Law § 349.
[57] *See* New York General Business Law § 350.

Plaintiff and other members of the Tuition Class, were "consumer-oriented."

237.   Defendant admits that such students and prospective students are consumers, titling its informational page "Pace University Consumer Information."[58]

238.   As part of its marketing practices and recruitment efforts, as described above, Defendant made numerous statements, representations and omissions to the public (including Plaintiff and members of the Classes) with respect to the in-person educational opportunity and on-campus access and experiences that students who enrolled at the Defendant would receive. Such statements, representations and omissions, which were uniform and identical in nature, were intended to induce potential students to enroll at the University for the Spring 2020 semester.

239.   With the reasonable expectation that students who enrolled at the University would receive in-person academic instruction with an on-campus experience (including housing and/or dining) for the entire 2020 Spring semester, Plaintiff and other members of the Classes paid tuition to Defendant.

240.   However, students did not receive an in-person academic instruction with on-campus experience, access and services for the entire 2020 Spring semester, were evicted from on-campus housing, and were not provided on-campus meals.  As a result, Plaintiff and other members of the Classes were proximately caused to pay inflated tuition and fees because they were deprived of in-person academic instruction and an on-campus experience, access and services for the Spring 2020 semester.

241.   Therefore, the aforementioned statements, representations and omissions made by the University were objectively false, misleading and deceptive to Plaintiff and the other Class Members, as well as the public at large.

---

[58] https://www.pace.edu/consumer-information

242.     Defendant's above-alleged actions constitute unfair business practices since the actions were deceptive and injurious to Plaintiff and other members of the Classes because students enrolled for the Spring 2020 term did not benefit from on-campus academic instruction and a unique on-campus experience during the entire spring term.

243.     In fact, Plaintiff and other students were not permitted to receive and benefit from on-campus academic instruction and a unique on-campus experience during the entire Spring 2020 semester.

244.     Defendant's acts and practices were designed to lead potential students, and the public, to believe that if students enrolled at the University then they would be entitled to receive in-class instruction and a unique campus experience for the entire Spring 2020 semester.

245.     Plaintiff and other members of the other Class Members were deceived and injured because students did not receive in-class instruction and a unique campus experience for the entire Spring 2020 semester.

246.     As a result of Defendant's foregoing violations of New York General Business Law § 349, § 350, *et seq.*, Defendants have directly and proximately caused damage to Plaintiff and other members of the Classes and are entitled to recover actual damages in an amount to be determined at trial, and an award of reasonable attorney's fees, expenses, costs and disbursements.

**<u>PRAYER FOR RELIEF</u>**

**WHEREFORE**, Plaintiff, individually and on behalf of members of the Classes, prays for judgment in their favor and against Defendant as follows:

A.     Certifying the Classes as proposed herein, designating Plaintiff as Class representative, and appointing undersigned counsel as Class Counsel;

B.     Declaring that Defendant is financially responsible for notifying the Class members

of the pendency of this action;

C.      Declaring that Defendant has wrongfully kept monies paid for tuition and fees;

D.      Requiring that Defendant disgorge amounts wrongfully obtained for tuition and fees;

E.      Awarding injunctive relief as permitted by law or equity, including enjoining Defendant from retaining the pro-rated, unused monies paid for tuition and fees;

F.      Scheduling a trial by jury in this action;

G.      Awarding Plaintiff's reasonable attorney's fees, costs and expenses, as permitted by law;

H.       Awarding pre and post-judgment interest on any amounts awarded, as permitted by law; and

I.      Awarding such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues so triable.


Dated November 29, 2021

                                        **ANASTOPOULO LAW FIRM, LLC**

                                By:  */s/ Blake G. Abbott*
                                       Roy T. Willey IV*
                                       Eric M. Poulin*
                                       Blake G. Abbott*
                                       32 Ann Street
                                       Charleston, SC 29403
                                       Tel: (843) 614-8888
                                       Email: roy@akimlawfirm.com
                                               eric@akimlawfirm.com
                                               blake@akimlawfirm.com

AND

**MOREA SCHWARTZ BRADHAM**
**FRIEDMAN & BROWN LLP**

John M. Bradham
444 Madison Avenue, 4th Floor
New York, NY 10022
Tel: (212) 695-8050
Email: jbradham@msbllp.com


**TOPTANI LAW PLLC**
Edward Toptani
375 Pearl Street, Suite 14106
New York, NY 10038
Tel: (212) 699-8930
Email: edward@toptanilaw.com


*Admitted Pro Hac Vice*

**ATTORNEYS FOR PLAINTIFF**