UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                       :

ELIZABETH TAPINEKIS, *individually and on behalf of* :
*others similarly situated,*                       :
                                       :

                     Plaintiff,      :           20-CV-3210 (JMF)
                                       :

        -v-                             :
                                       :           MEMORANDUM OPINION
PACE UNIVERSITY,                       :              AND ORDER
                                       :

                     Defendant.     :
                                       :
-------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      Xaviera Marbury filed this putative class action, familiarity with which is presumed,

against Pace University ("Pace") on April 23, 2020, seeking partial refunds for tuition and fees

due to Pace's closure in Spring 2020 as a result of the COVID-19 pandemic. *See* ECF No. 1.  In

an Opinion and Order entered on February 26, 2021, the Court resolved Pace's motion for

judgment on the pleadings, allowing only two of Marbury's claims to proceed: a contract claim

relating to the change in instructional format from in-person to online classes and a contract

claim relating to fees for on-campus facilities and activities. *See In re Columbia Tuition Refund

Action*, 523 F. Supp. 3d 414, 431-32 (S.D.N.Y. 2021) (ECF No. 54).[1]  On August 20, 2021,

during discovery, Marbury moved for leave to file a Second Amended Complaint ("SAC"),

seeking, among other things, to substitute Elizabeth Tapinekis as the named Plaintiff. *See* ECF

No. 88.  On November 24, 2021, the Court granted in part and denied in part the motion to

---

[1]     The Court's February 26, 2021 Opinion and Order also addressed a motion to dismiss
filed by Columbia University in a parallel case.  On March 29, 2022, the Court granted final
approval to a class action settlement in that case.  *See* 20-CV-3208 (JMF), ECF No. 115.

amend.  *See Marbury v. Pace University*, 2021 WL 5521883 (S.D.N.Y. Nov. 24, 2021) (ECF

No. 92).  Specifically, the Court permitted the substitution of Tapinekis for Marbury as the

named Plaintiff, but held that "the only claim" that could proceed was "the contract claim

relating to the fees associated with on-campus facilities and activities." *Id.* at *3 n.4.  Pace now

moves, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, to dismiss for lack of

subject-matter jurisdiction, arguing that, with only that one claim remaining, the case no longer

meets the $5 million jurisdictional threshold required for cases brought under the Class Action

Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(6).  *See* ECF No. 94-2 ("Def.'s Mem."), at 1.

"Under CAFA, as under the traditional rule, the party asserting subject matter jurisdiction

has the burden of proving it.  To satisfy its burden, [a] defendant must prove to a reasonable

probability that there is the necessary minimal diversity and the amount in controversy exceeds

$5 million." *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 59 (2d Cir. 2006).  In evaluating whether

the "reasonable probability" burden has been met, courts apply "a rebuttable presumption that

the face of the complaint is a good faith representation of the actual amount in controversy."

*Colavito v. New York Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006).  In order to

rebut that presumption, "the party opposing jurisdiction must show to a legal certainty that the

amount recoverable does not meet the jurisdictional threshold." *Scherer v. Equitable Life

Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) (citations omitted); *see also Makarova

v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ("In resolving a motion to dismiss for lack of

subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside

the pleadings.").  Legal certainty is a high bar, and "[w]here the damages sought are uncertain,

the doubt should be resolved in favor of the plaintiff's pleadings." *Tongkook Am., Inc. v. Shipton

Sportswear Co.*, 14 F.3d 781, 785 (2d Cir. 1994); *see also Pyskaty v. Wide World of Cars, LLC*,

856 F.3d 216, 223 (2d Cir. 2017).  Significantly, "in cases filed originally in federal court," as

this case was, "courts look to the amended complaint to determine jurisdiction."  *Gale v.

Chicago Title Ins. Co.*, 929 F.3d 74, 78 (2d Cir. 2019) (cleaned up); *see also In Touch Concepts,

Inc. v. Cellco P'ship*, 788 F.3d 98, 101 (2d Cir. 2015).

Here, Pace has met the high bar of showing to a legal certainty that the amount in

controversy no longer exceeds the $5 million threshold.  As noted, only one claim remains in the

SAC: Tapinekis's contract claim with respect to "mandatory fees" associated with on-campus

facilities and activities.  The SAC identifies four such fees: a general fee, a student activity fee, a

health center fee, and a technology fee.  ECF No. 93 ("SAC"), ¶ 42.  Through a declaration from

Robert Almon, its Executive Vice President, Finance and Administration, and Chief Financial

Officer, Pace demonstrates that the "the gross amount of these fees assessed by the University

during the Spring 2020 semester was $6,774,274."  ECF No. 94-1 ("Almon Decl."), ¶ 7.[2]  That

figure is obviously more than $5 million, but since the closure occurred in March 2020 — in the

middle of the Spring semester — both sides agree that the class could recover only a fraction of

the gross amount.  Tapinekis argues that students are entitled to 61% of the fees assessed, ECF

---

[2]      Specifically, Almon reports that, for the Spring 2020 semester, the general fee was $435 per student, the student activity fee was $101, the health center fee was $75, and the technology fee was $105.  *Id*. ¶ 3.  He also reports that "[n]ot all enrolled students pay each of these fees. For example, law students do not pay the Technology Fee[,] certain graduate students do not pay the Health Center Fee[, and] the General Institutional Fee is discounted for students who are not taking a full load of credits."  *Id*. at ¶ 5.  In her opposition to Pace's motion, Tapinekis cites to a statement — purportedly from an archived version of Pace's website — indicating that the annual fees for undergraduate students for the 2019-2020 school year were $1,732, or $870 each semester.  ECF No. 96 ("Pl.'s Opp'n"), at 3-4 & n.2.  But this allegation appears nowhere in her SAC.  And, while the Court is permitted to consider evidence outside the pleadings in resolving a motion to dismiss for lack of subject matter jurisdiction, *Makarova*, 201 F.3d at 113, Almon's declaration makes clear that determining the total fees assessed to all students (graduate and undergraduate) is not as simple as multiplying the number of students enrolled by the figure purportedly on Pace's website because "[n]ot all enrolled students pay each of these fees." Almon Decl. ¶ 5.

No. 96 ("Pl.'s Opp'n"), at 4, while Pace alleges that, because of spring break, students missed only 55% of the semester and are entitled to no more than that share of the semester's fees, ECF No. 97 ("Def.'s Reply"), at 3.  But, either way, the gross amount that the class could recover of these fees falls below the $5 million CAFA threshold, as 61% of $6,774,274 is $4,132,307.[3]

Tapinekis argues that she "does not merely seek compensation for" the general fee, the student activity fee, the health center fee, and the technology fee because the SAC prefaces the list of these four fees with the phrase "including but not limited to."  Pl.'s Opp'n 3.  But that argument is unavailing.  First and foremost, Tapinekis's records confirm that she was assessed only the four enumerated fees (and in the amounts reported by Almon), *see* ECF No. 98-1, at 6,[4] so she would lack standing to challenge any other fees,  *see Warth v. Seldin*, 422 U.S. 490, 502 (1975) (holding that named class plaintiffs "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class"); *Zanotti v. Invention Submission Corp.*, No. 18-CV-5893 (NSR), 2020 WL 2857304, at *7 (S.D.N.Y. June 2, 2020) ("[R]eliance on the requirements for jurisdiction under CAFA is not enough.  It is well-settled that federal courts have subject matter jurisdiction only if constitutional standing requirements are also satisfied."); *Hines v. Overstock.com, Inc.*, No. 09-CV-0991 (SJ), 2013 WL 4495667 (E.D.N.Y. Aug. 19, 2013) (applying the rule that "[a] putative class representative lacks standing to bring a claim if he or she did not suffer the injury that gives rise to the claim" to a

---

[3]    Pace argues that the amount in controversy is actually even lower because it has to be discounted to account for University-funded financial aid.  Def.'s Mem. 5-6.  The Court need not and does not reach that argument.

[4]    Tapinekis appears to have been charged a "Special Course Fee" for several of her classes, along with a "Study Abroad Fee," but those fees appear to have been refunded, *see* ECF No. 98-1, at 6, and are mentioned nowhere in the SAC.  In addition, the "special course fee was related only to that course and was paid for only by students enrolled therein."  Def.'s Reply 2 n.1 (internal quotation marks omitted).

class action brought under CAFA).  Second, and in any event, the SAC mentions no other fees

and, even though document discovery is now complete, Tapinekis has neither sought to amend

the Complaint nor identified in her opposition any additional fees.  Tapinekis cannot create

subject matter jurisdiction by summarily alleging that there may be additional, unidentified fees.

Indeed, the SAC does not even state a claim for other fees, since, "in order to plead an

'agreement' for purposes of a breach of contract claim," a plaintiff must "identify the specific

contractual provisions that were allegedly breached."  *Goldblatt v. New York Inst. of Tech.*, No.

18-CV-00265 (DRH) (ARL), 2020 WL 5027150, at *7 (E.D.N.Y. Aug. 25, 2020); *see also, e.g.*,

*Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., L.L.C.*, 455 F. App'x 102, 104

(2d Cir. 2012) (summary order) ("Without providing additional factual allegations regarding,

*inter alia,* the formation of the contract, the date it took place, and the contract's major terms, the

proposed amended complaint similarly fails to sufficiently plead the existence of a contract.").

In short, Pace has "show[n] to a legal certainty that the amount recoverable does not meet

the jurisdictional threshold."  *Scherer*, 347 F.3d at 397 (internal quotation marks omitted).

Accordingly, Tapinekis's claims must be and are dismissed without prejudice for lack of subject-

matter jurisdiction.  *See, e.g.*, *Hernandez v. Conriv Realty Assocs.*, 182 F.3d 121, 123 (2d Cir.

1999) ("Article III deprives federal courts of the power to dismiss a case with prejudice where

federal subject matter jurisdiction does not exist.").  Moreover, although leave to amend should

be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), it is "within the sound

discretion of the district court to grant or deny leave to amend," *Broidy Cap. Mgmt. LLC v.*

*Benomar*, 944 F.3d 436, 447 (2d Cir. 2019) (internal quotation marks omitted).  Here, the

complaint has already been twice amended and Tapinekis is "unable to demonstrate that [s]he

would be able to amend h[er] complaint in a manner which would survive dismissal" again.

*Acevado v. Citibank, N.A.*, No. 10-CV-8030 (PGG), 2019 WL 1437575, at *13 (S.D.N.Y. Mar. 31, 2019) (quoting *Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999)).

The Clerk of Court is directed to terminate ECF No. 94, to enter judgment consistent with this Opinion and Order, and the close the case.

SO ORDERED.

Dated: April 11, 2022
       New York, New York

                           JESSE M. FURMAN
                           United States District Judge